IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. HUFF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
HERCHEL HAROLD HUFF, APPELLANT.

Filed December 17, 2013.    No. A-12-1072.

Appeal from the District Court for Furnas County: JAMES E. DOYLE IV, Judge. Affirmed.

Brian J. Davis, of Berreckman & Davis, P.C., and, on brief, Jeffrey M. Wightman, of Wightman & Wightman, for appellant.

Jon Bruning, Attorney General, Erin E. Tangeman, and J. Kirk Brown for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

Herchel Harold Huff was convicted of motor vehicle homicide, among other charges, in connection with the death of Kasey Jo Warner. Following his direct appeals, Huff filed a motion for postconviction relief. The claims for relief in this appeal relate to Huff's allegations that his trial counsel were ineffective for failing to investigate and call certain witnesses who may have provided testimony concerning the amount of alcohol he consumed and concerning his actions and demeanor on the day of the accident. The district court for Furnas County overruled these claims of ineffective assistance of counsel without an evidentiary hearing. Finding no error in the district court's conclusions, we affirm.

I. FACTUAL BACKGROUND

Huff spent the afternoon of October 3, 2007, at two different bars in Oxford, Nebraska. While he was driving back to his home in Holbrook, Nebraska, Huff's car hit and killed Warner while she was jogging on a country road. Huff pled guilty to manslaughter and was convicted at trial of motor vehicle homicide, refusal to submit to a chemical test, and tampering with a witness. On direct appeal to the Nebraska Supreme Court, Huff's conviction and sentence for

- 1 -

manslaughter were vacated. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). His sentence for refusing a chemical test was also vacated, and he was resentenced on remand on that conviction. Huff's other convictions and sentences were affirmed. See *id*.

In this opinion, we focus only on the factual background as it relates to Huff's specific claims in his postconviction motion. These claims relate to the issue of whether Huff was driving under the influence of alcohol at the time of the accident, which was the underlying basis for the motor vehicle homicide charge. For a more extensive background of the underlying facts in this case, we direct the reader to the Nebraska Supreme Court's opinion on direct appeal. See *id*.

## 1. EVIDENCE AT HUFF'S TRIAL

At trial, there was conflicting evidence regarding how much alcohol Huff had consumed the day of the accident. Huff testified that he only had four drinks that day. He admitted drinking one beer during his first visit to the Wagon Wheel Inn, two Jägerbombs while he and Ryan Markwardt were at a second bar, Thelma Lou's, and part of another beer when he returned with Markwardt to the Wagon Wheel Inn. Dianna Wilhelms, a bartender at the Wagon Wheel Inn, testified that she served Huff only two beers and remembered that Huff did not finish the second.

Markwardt, on the other hand, testified that Huff had been drinking more than him that day. Markwardt testified that when he arrived at the Wagon Wheel Inn after finishing work for the day, Huff was already there with a beer in front of him. Markwardt estimated that Huff drank four to five beers while they were at the Wagon Wheel Inn the first time that afternoon. Markwardt claimed that after leaving the Wagon Wheel Inn, he and Huff walked to a second bar. Markwardt testified that they had a couple of beers and a couple of Jägerbombs at the second bar. Markwardt stated that after leaving the second bar, they stopped at a general store before returning to the Wagon Wheel Inn for a couple more beers and a cocktail. Markwardt's blood was tested that day, approximately 1½ hours after the accident, and his blood alcohol level was .13 grams of alcohol per 100 milliliters of blood.

A number of witnesses observed Huff's demeanor at the scene of the accident. Mike Pruitt was "cutting beans" in a nearby field at the time of the accident and responded to the scene soon after seeing Huff's vehicle go into the ditch. He stated that when Huff asked to use his telephone, there was an obvious smell of alcohol on Huff's breath. He also testified that Huff was "stumbling around" after the accident. Sgt. Lee Lozo of the Furnas County sheriff's office was the first officer to arrive on the scene. Lozo testified that he observed Huff to be "very upset" and could smell a strong odor of alcohol coming from Huff. Lozo arrested Huff for suspected driving under the influence (DUI) and arranged to have Huff transferred to a hospital for a blood draw. During his testimony, Lozo explained that he did not ask Huff to perform any field sobriety tests because of the chaotic nature of the scene, Huff's emotional state, and Huff's invocation of his right to counsel.

Deputy Vernon Levisay transported Huff to the hospital to attempt a blood draw, which Huff later refused. Levisay testified that he could smell a strong odor of alcohol coming from Huff. In addition, Levisay noted that Huff's eyes were bloodshot and glazed and that he had extreme difficulty walking. Levisay also reported that Huff vomited twice--once before getting into Levisay's patrol car and once in the patrol car while en route to the hospital. Levisay also testified that during the trip to the hospital, Huff's speech was noticeably slurred.

Dr. Henry Nipper, a forensic toxicologist, testified at trial over Huff's objection that Huff had been impaired by alcohol at the time of the accident. He calculated that Huff's blood alcohol content was .15 grams of alcohol per 100 milliliters of blood.

2. HUFF'S POSTCONVICTION MOTION

Huff filed a motion for postconviction relief and request for an evidentiary hearing on August 20, 2012. He raised five grounds for relief in that motion. Summarized, these grounds are as follows: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) judicial errors affecting his trial and sentence, (4) police and investigator misconduct, and (5) constructive denial of his right to counsel. Within each ground, Huff alleged a number of claims. Because this appeal relates to only two of Huff's claims of ineffective assistance of counsel, we do not further address any of his other claims in this opinion.

Huff alleged that both of his trial counsel were ineffective because they did not investigate or call witnesses who could have testified to the amount of alcohol he consumed on October 3, 2007. He identifies three witnesses to support this claim: Terrie Quinn, the bartender at Thelma Lou's; Tina Long, the second bartender at the Wagon Wheel Inn; and an unnamed bartender at the "Middle Bar." Huff states that Quinn was bartending at Thelma Lou's on that day and could have testified to the amount of alcohol Huff purchased and whether his demeanor demonstrated that he was under the influence. Huff alleges that Long would have "showed a timeline" and would have testified to the amount of alcohol he consumed. Finally, he argues that his trial counsel failed to investigate possible witnesses at the Middle Bar in Oxford. He argues that his attorneys should have determined whether there were employees from that bar who could have testified whether Huff was drinking at that establishment on October 3 or whether he purchased any beer "to go."

Huff also alleged that his trial counsel were ineffective because they failed to investigate and call witnesses to establish his actions and demeanor on October 3, 2007. These allegations relate to other places, besides the two bars, that Huff frequented on the day of the accident. First, he claims that his trial counsel should have called the woman working at the flower shop in Oxford as a witness. Huff contends that this woman could have testified to the amount of time it took him to purchase 2 dozen roses, the letter he faxed, the time he spent in the flower shop, and whether he appeared to have been upset about getting back together with his ex-wife. Second, Huff claims that his trial counsel should have called the women working at a discount store in Oxford to testify on his behalf. He argues that this testimony would show his innocence because these women could testify to how he was acting when he purchased hygiene products and the amount of time he spent in that store. Third, Huff claims that his attorneys should have called a man nicknamed "Whisky" and his girlfriend as witnesses because they observed Huff on a bench for over half an hour talking on the telephone. According to Huff, these people would have testified to his demeanor while they observed him and whether they observed him drinking. Finally, Huff contends that his trial counsel should have investigated the convenience store in Oxford to determine if there were any surveillance cameras or employees who remembered that he visited the store that day. He contends that if his counsel had found the receipt for his purchase of a bottle of water and pack of cigarettes, he would have been able to establish a timeline and his innocence.

For each of these claims, Huff contends that he informed his trial counsel that he wanted these witnesses to be called during his defense.

### 3. DISTRICT COURT'S ORDER

On October 22, 2012, the district court entered a detailed order ruling on Huff's postconviction motion. In this order, the district court analyzed each of Huff's claims for relief and scheduled an evidentiary hearing in order to address some of the claims. However, the court also denied a number of Huff's claims and dismissed these claims without an evidentiary hearing, including the claims at issue in this appeal. We address the district court's order as it pertains to Huff's two claims set out above.

#### (a) Failure to Call Witnesses to Establish Huff's Alcohol Consumption

The district court dismissed Huff's claim that his trial counsel were ineffective because they failed to investigate and call certain witnesses who allegedly would have testified to his alcohol consumption on the night of the accident without an evidentiary hearing. The court concluded that Quinn's testimony, at best, would have corroborated both Huff's and Markwardt's testimony that Huff consumed two "Jägerbombs" at the "other bar." In the court's opinion, calling Quinn to testify would not have materially advanced Huff's defense that he consumed no more than four alcoholic beverages that day.

The court also concluded that Long's potential testimony would have had no additional effect during the trial. Long was the second bartender at the Wagon Wheel Inn and, under Huff's trial testimony, would have seen Huff for only a short period of time during his second visit to that bar. Because Huff and Wilhelms testified that he had only two beers at the Wagon Wheel Inn, the district court concluded Long's testimony would have agreed with Huff's testimony at best or it may have contradicted prior testimony.

Finally, the court determined Huff's claim that his trial counsel were ineffective because they did not investigate a third Oxford bar, the Middle Bar, was meritless. The court found no evidence in the record to establish that Huff had been at this third bar. Thus, even if he had proved that he was not at a third bar, such a fact would not have established his innocence.

#### (b) Failure to Call Witnesses Who Would Have Testified to Huff's Demeanor

The district court also denied and dismissed without an evidentiary hearing Huff's claim that his attorneys were deficient because they failed to call additional witnesses who would have testified to his demeanor on the day of the accident. In so ruling, the court concluded that the unnamed employees in the flower shop, the discount store, and the convenience store, along with the man named "Whisky" and his girlfriend, would have provided only cumulative evidence. The court noted that there was no dispute at trial as to Huff's nondrinking activities that day and that these witnesses' potential testimony do not establish a probability sufficient to undermine confidence in the outcome of the trial.

## II. ASSIGNMENTS OF ERROR

Huff argues that the district court erred by dismissing these postconviction claims without an evidentiary hearing. Specifically, Huff maintains that his trial counsel were ineffective by failing to investigate and call witnesses who would have testified to the actual amount of alcohol he consumed that day and by failing to investigate and call witnesses who would have testified to his demeanor the day of the accident. He contends that his claims were sufficient to merit an evidentiary hearing.

## III. STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id*. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Poe, supra*.

## IV. ANALYSIS

Before addressing each of Huff's assigned errors, we set out the framework for analyzing an ineffective assistance of counsel claim on postconviction. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013). If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *Id*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Marks, supra.* An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id*.

In addressing the "prejudice" component of the *Strickland* test, a court focuses on whether a trial counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *State v. Marks, supra*. To show prejudice under the prejudice component of the *Strickland* test, there must be a reasonable probability that but for the petitioner's counsel's deficient performance, the result of the proceeding would have been different. *State v. Marks, supra*.

### 1. FAILURE TO INVESTIGATE AND CALL WITNESSES AS TO AMOUNT OF ALCOHOL HUFF CONSUMED ON OCTOBER 3, 2007

Huff's claim that his trial counsel were ineffective for failing to investigate and call witnesses who could have testified to how much alcohol he consumed does not entitle him to postconviction relief. Postconviction claims that trial counsel was ineffective for failing to call particular witnesses may be dismissed without an evidentiary hearing when the motion does not include specific allegations regarding the testimony which the witnesses would have given if called. *Id.*; *State v. Obley*, 19 Neb. App. 26, 798 N.W.2d 151 (2011). As to Quinn and Long, Huff alleges that these witnesses would have testified to the amount of alcohol he consumed at each of their bars on the day of the accident. However, and critically, Huff does not specifically allege what these witnesses would have testified to or whether they even possessed information that would have been helpful to his defense. Thus, Huff has failed to make sufficient factual allegations that would lead to a showing of his trial counsel's deficient performance or prejudice.

Further, Huff's argument that his trial counsel should have investigated the Middle Bar also fails. Our review of the record shows there was no evidence presented at trial to demonstrate that Huff had even visited a third bar on the date of the accident. Therefore, any attempt to prove that he was not in this bar would not have aided his defense. This assigned error is without merit.

### 2. FAILURE TO INVESTIGATE AND CALL WITNESSES REGARDING HUFF'S DEMEANOR ON OCTOBER 3, 2007

Huff also argues that his trial counsel were ineffective because they did not call certain witnesses who could have testified that he was not showing signs of impairment on the day of the accident. He claims that his counsel should have called employees from the flower shop, the discount store, and the convenience store to establish his demeanor. He also states that a man nicknamed "Whisky" and his girlfriend could have testified to their observation of Huff's demeanor in Oxford that day. In his motion, Huff focuses on utilizing these witnesses' testimony to establish a timeline of the events on that day.

Having analyzed Huff's claim and reviewed the record, we conclude that Huff cannot demonstrate a reasonable probability that he would have been acquitted if his counsel had investigated and called these witnesses. First, Huff's use of these witnesses to establish a timeline does not establish his innocence, because Huff's timeline of events was not contradicted at trial. Additionally, even if each of these witnesses would have testified that Huff did not appear intoxicated, this testimony would still be opposed to the State's evidence at trial. A number of witnesses from the scene of the accident testified that Huff showed various signs of intoxication after the accident, including slurred speech, stumbling, vomiting, glazed and bloodshot eyes, and emission of a strong odor of alcohol. When the evidence from trial is weighed against this potential testimony, we conclude that Huff cannot demonstrate that he would have been acquitted but for his counsel's failure to call these witnesses.

The district court correctly denied this claim without an evidentiary hearing. This assigned error is without merit.

## V. CONCLUSION

We conclude that the district court did not err when it denied these particular claims in Huff's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.